WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PageMasters, Inc.,             )
                               )
                Plaintiff,     )        No. CV-08-00553-PHX-RCB
                               )
        vs.                    )            **O R D E R**
                               )
Autodesk, Inc.,                )
                               )
                Defendant.     )
_____)

     This lawsuit is the latest attempt by plaintiff PageMasters,
Inc. to obtain "several million dollars" in royalty payments which
it believes Océ-Technologies, B.V. ("Océ"), its former licensee and
a non-party, owes it.  See Co. (doc. 1) at 3, ¶ 10.  That purported
obligation is based upon a Software Distribution Agreement entered
into more than a decade ago, in 1997, between PageMasters and Océ
("Océ Agreement").  Currently pending before the court is a motion
to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by defendant,
Autodesk, Inc. (doc. 10).  The court is intimately familiarity with
the history of this litigation having presided over not one, but

1    two, prior closely related lawsuits.[1]   See   Océ-Technologies, B.V.

2    v. PageMasters, Inc., No. CIV 04-0557-PHX-RCB ("PageMasters I");

3    and PageMasters, Inc. v. Océ-Technologies, B.V., No. CIV 05-1519-

4    PHX RCB ("PageMasters II").   Given that familiarity, and the

5    straightforward issues which Autodesk's motion raises, oral

6    argument will not assist the court.   Therefore, the court denies

7    the parties' requests for oral argument.   See Mahon v. Credit

8    Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999).

9                          ***Background***

10   ***I.  Scope of Record***

11        Before outlining the facts, the court must decide which

12   documents it may properly consider on this motion to dismiss.

13   Ordinarily in ruling on a Rule 12(b)(6) motion, such as Autodesk's,

14   a court may not consider matters beyond the complaint.   See Corrie

15   v. Caterpillar, Inc., 503 F.3d 974, 979-980 (9th Cir. 2007)

16   (internal quotation marks and citation omitted)("In general, the

17   focus of any Rule 12(b)(6) dismissal . . . is the complaint.") In

18   the present case, however, both parties are relying upon documents

19   other than the complaint.   The court must therefore determine

20   whether it may properly consider any of those documents without

21   converting this motion into one for summary judgment.   See Lee v.

22   City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001) (internal

23   quotation marks and citation omitted) ("[A] court may consider

24   material which is properly submitted as part of the complaint on a

25   motion to dismiss without converting th[at] motion . . . into a

26   ────────────

27        [1]     Indeed, this court's "familiarity with the transaction and the
     arguments raised in [the] instant case," was the primary reason for transferring
     the present action from the Honorable Neil V. Wake to this court.  Order (doc. 21)
28   at 5:16-17.

motion for summary judgment.")

### 1. Incorporation by Reference

Both parties heavily rely upon the Océ Agreement and the March 2000 Asset Purchase Agreement ("APA") between PageMasters and Buzzsaw.[2]  Unquestionably those two agreements form the basis for PageMasters' claims herein, and although the complaint mentions both, neither is attached thereto.  Additionally, despite the fact that Autodesk is requesting the court to take judicial notice of a number of documents, that request does not include these two agreements.[3]  Nonetheless, as the incorporation by reference doctrine permits, the court will consider the Océ Agreement and the APA on this motion to dismiss.  See U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); see also Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotation marks and citations omitted) (incorporation by reference doctrine allows for consideration of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading[]").  Likewise, the court will "treat such a document[s]

---

[2]    After the closing of that APA, Buzzsaw "merged into Autodesk[.]" Co. (doc. 1) at 2, ¶ 8.  Thus, Autodesk is the successor-in-interest to Buzzsaw. To simplify matters, both companies will be referred to throughout as Autodesk.

[3]    Autodesk did attach those two agreements to its RJN as exhibit A and B respectively, but specifically limited its request for judicial notice to exhibits C-O thereto.  RJN (doc. 11), at 2:2-3.  Autodesk correctly implies, however, as discussed above, that the court may properly consider those two agreements based upon the incorporation by reference doctrine.  See Mot. (doc. 10) at 3, n. 2.

1   as part of the complaint, and . . . assume that [their] contents

2   are true for purposes of [this] motion to dismiss under Rule

3   12(b)(6)." See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006)

4   (internal quotation marks and citation omitted).

5   ### 2.  Request for Judicial Notice

6   Because the 13 filings from PageMasters' related lawsuits and

7   arbitration are a matter of public record, Autodesk contends that

8   the court can properly take judicial notice of their "existence[.]"

9   Autodesk's Request for Judicial Notice ("RJN") (doc. 11) at 2-3.

10  The court may also take judicial notice of "certain arguments and

11  statements made" in those filings, according to Autodesk, because

12  they are "readily verifiable . . . and their existence cannot be

13  subject to any dispute because they were made by a party to the

14  current action in a prior related lawsuit." Id. at 3:1-2; and

15  3:19-21.  Tellingly, PageMasters did not respond to this RJN.

16  Perhaps because it, too, is relying upon some of those prior

17  filings.[4]

18  Pursuant to Fed. R. Evid. 201, a court may "take judicial

19  notice of matters of public record and consider them without

20  converting a Rule 12 motion into one for summary judgment." U.S.

21  v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008) (internal

22  quotation marks and citation omitted).  Pleadings and orders in

23  other actions are matters of public record, and hence properly the

24  subject of judicial notice. See, e.g., Reyn's Pasta Bella, LLC v.

25  Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking

26

27          [4]      PageMasters goes so far as to "incorporate" into its Response this
28  court's "Undisputed Facts" as set forth in PageMasters II, 2006 WL 753164 (RJN
    (doc. 11), exh. K thereto). See Pl. Resp. (doc. 17) at 2.

1  judicial notice, as a matter of public record, "pleadings,

2  memoranda, expert reports, etc., from [earlier] litigation[,]"

3  which were thus "readily verifiable"); Kourtis v. Cameron, 419 F.3d

4  989, 994 n.2 (9th Cir. 2005) (citation omitted) ("court records

5  from related proceedings can be taken into account without

6  converting a motion to dismiss into a summary judgment motion[]"),

7  overruled on other grounds, Taylor v. Sturgell, ___ U.S. ___, 128

8  S.Ct. 2161, 171 L.Ed.2d 155 (2008).

9       By its silence, and the fact that it is also relying in part

10 upon those prior court filings, the court assumes that PageMasters

11 is not opposing Autodesk's RJN.  Accordingly, the court grants

12 Autodesk's RJN as to exhibits C-O attached thereto and will

13 consider those exhibits to the extent necessary to resolve this

14 motion, as well as the Océ Agreement and the APA.  It is only

15 taking judicial notice of those prior filings to show, for example,

16 that a prior proceeding occurred or that a certain argument or

17 position was asserted therein.  See, e.g., Faurie v. Berkeley

18 Unified School District, 2008 WL 820682, at *2 n. 3 (N.D.Cal. March

19 26, 2008) (taking judicial notice of pleadings to "see what

20 arguments Defendants advanced in" another court and what court

21 ruled); Mitchell v. Branham, 2008 WL 3200666, at *8 (S.D.Cal. Aug.

22 5, 2008) ("[d]ocuments that are part of the public record may be

23 judicially noticed to show . . . that a judicial proceeding

24 occurred or that a document was filed in another court case[]").

25 Autodesk is not requesting that the court take judicial notice of

26 factual findings made by other courts or the arbitrator, Mot. (Doc.

27 10) at 1, n.1; and indeed, the court could not do that.  See

28 Mitchell, 2008 WL 3200666, at *8 (citations omitted) ("[A] court

- 5 -

may not take judicial notice of findings of facts from another

case.")   The court may consider the prior court filings, the Océ

Agreement and the APA without converting this motion to one for

summary judgment.  See <u>Nunez v. Idaho Atty. Gen.</u>, 2009 WL 484431,

at *3 (D.Idaho Feb. 26, 2009) (citation omitted) ("A court may look

beyond the complaint to matters of public record, and doing so does

not convert a motion for . . . dismissal into a motion for summary

judgment.")

### *3.  PageMasters' Documents*

PageMasters also relies upon documents beyond the complaint;

but, it does not request that the court take judicial notice of any

of those documents.  Perhaps most significantly, PageMasters is

relying upon a September 12, 2007, letter from PageMasters to

Autodesk to establish that in its view that is the accrual date of

its breach of contract claim against Autodesk.  In that letter,

PageMasters informs Autodesk of this court's September 11, 2007,

decision denying the former's motion for post-judgment relief.  <u>See</u>

Resp. (doc. 17), exh. B thereto.  PageMasters then inquires as to

"whether Autodesk will demand an audit of Oce[.]" <u>Id.</u> PageMasters

also attaches to its Response the December 11, 2006, affidavit of

its attorney, which is exhibit M to Autodesk's RJN.  Unlike the

RJN, however, PageMasters includes the five exhibits to that

affidavit, including communications between PageMasters and

Autodesk pertaining to the former's request that Autodesk demand an

audit of Océ.

Autodesk objects to what it views as this impermissible

expansion of the record.  Autodesk accurately points out that the

complaint does not include allegations of these purported

communications between it and PageMasters as to an audit demand.
Autodesk further asserts, with no explanation, that these
communications are not proper matters for judicial notice, even if
PageMasters had made such a request.

The court is well aware that Fed. R. Evid. 201(c) allows it
"to take judicial notice whether requested or not."   Not all facts
are subject to judicial notice, however.  Only those which are
"either (1) generally known within the . . . jurisdiction of the
trial court or (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned"
are properly subject to judicial notice.  Fed. R. Evid. 201(b).
Except for the court filings which PageMasters attaches to its
response (including the McKee affidavit of which judicial notice
has already been taken), none of the other matters are the "kinds
of facts" which may be judicially noticed.  See id.  Thus, even if
the court were so inclined, it could not take judicial notice of
the correspondence between PageMasters and Autodesk pertaining to
the audit demand.  Given the scant allegations in the complaint,
and in light of the foregoing, the facts set forth below are drawn
primarily from documents referenced in the complaint or prior court
filings of which the court has taken judicial notice.

## II.  Factual & Procedural History

Essentially this litigation began with PageMasters' 2003
demand upon Océ for an arbitration.  Two lawsuits followed --
PageMasters I and PageMasters II.  So, this is the third lawsuit
arising out of the Océ Agreement.  Assuming familiarity with those
prior proceedings, there is no need to repeat the entire protracted
history of this litigation.  Some aspects of that history bear

repeating, though, because they directly pertain to the narrow
issues which Autodesk's motion raises.

Basically the Océ Agreement granted Océ an exclusive right to
license PageMasters' software.  RJN (doc. 11), exh. A thereto.
Under the terms of that Agreement, Océ agreed to pay PageMasters
royalties for copies of the software which Océ shipped.  Id., exh.
A thereto at §§ 5.4 and 5.6.  One provision of that Agreement has
been at the center of this dispute for years - the audit provision.
The Agreement required Océ  to "maintain a complete, clear and
accurate record of the number of copies of the Software [which it]
shipped[.]"  Id. at ¶ 5.6.  Correspondingly, PageMasters had "the
right - upon 10 . . . days prior written notice - to have an
inspection and audit of all such records of Océ conducted by an
independent audit firm reasonably acceptable to both parties[.]"
Id.

Roughly three years later, in March 2000, PageMasters entered
into the APA with Autodesk.  That APA mandated that "[a]ll accounts
receivables [sic] for sales that occurred prior to closing [i.e.,
March 21, 2000], . . . remain[ed] the property of [PageMasters]."
RJN (doc. 11), exh. B thereto at 14 (Schedule G).  "All unbilled
receivables for sales that occurred prior to the closing, . . .
also remain[ed] the property of [PageMasters] including monies due
from Oce."  Id.  In assigning the rights of the Océ Agreement to
Autodesk, Autodesk "assume[d] all responsibilities under th[at]
. . . Agreement as of the Closing."  Id., exh. B thereto at 20,
§ 5.16.

As with the audit provision in the Océ Agreement, one
provision of the APA -- the so-called single audit provision -- has

- 8 -

1  been hotly disputed in the prior actions, and continues to be here.

2  That provision states in relevant part:

> [Autodesk] will provide reasonable assistance to
> [PageMasters] to assist [PageMasters] in conducting
> a single audit of Océ's financial records (as
> permitted under the Océ Agreement) to verify amounts
> due and paid by Océ to [PageMasters] prior to the
> Closing, and will pay [PageMasters] the Net Revenues
> actually recovered pursuant to such audit.

7  Id.

8  **_A.  PageMasters I_**

9  In approximately "October 2000, PageMasters notified Oce that

10 it was exercising its right to conduct an audit of its books and

11 records." RJN (doc. 11), exh. J thereto at 3, ¶ 16; see also RJN

12 (doc. 11), exh. I thereto at 7, ¶ 26.   A dispute arose as to the

13 scope of that audit and eventually, in 2003, PageMasters commenced

14 an arbitration proceeding against Océ.   Id., exh. I thereto at 7-

15 10, ¶¶ 27-39.  In response to Océ's motion to dismiss that

16 arbitration, on November 26, 2003, inter alia, PageMasters filed a

17 cross-motion seeking "leave to . . . join Autodesk . . . as an

18 indispensable party." Id., exh. O thereto at 10.  PageMasters

19 argued that "to the extent [that] the Arbitrator finds that the

20 provisions of the [APA], required . . . Autodesk . . . to

21 affirmatively pursue PageMasters' claims (the right to perform an

22 audit and receive payment of accounts receivable existing prior to

23 the [APA])," it should be granted "leave to join Autodesk as an

24 indispensable party to the arbitration." Id., exh. O thereto at

25 10-11.  The arbitrator denied Océ's motion to dismiss.  Id., exh. D

26 thereto at 5, ¶ 19.  The record is silent as to the outcome of that

27 cross-motion.

28 Océ then commenced an action in this court seeking to enjoin

- 9 -

1  PageMasters from pursuing the arbitration.   During PageMasters I,

2  PageMasters took the position that under the APA it "did not

3  transfer and assign to [Autodesk] its right to conduct an audit of

4  Océ's books and records" under the Océ Agreement.   See RJN (doc.

5  11), exh. D thereto at 2, ¶ 3.   Similarly, Pagemasters' indicated

6  its "understanding that, under [the single-audit provision] of the

7  [APA] . . . , it remained entitled to demand an audit of Oce under

8  the [Océ] Agreement."   Id., exh. D thereto at 7, ¶ 28 (citation

9  omitted).   PageMasters based its "understanding" on the declaration

10 of Jayson Jones, one of its "shareholder[s]" and "officer[s][.]"

11 Id., exh. E thereto at 1, ¶ 1.

12      Based upon his "personal knowledge" acquired through "active[]

13 participat[ion]" in negotiati[ng]" both the Océ Agreement and the

14 APA, Mr. Jones declared that "[b]ased on the language in [the

15 single-audit provision] of the [APA], [he] understood that

16 PageMasters continued to have the right to demand an audit of Oce's

17 books and records under the [Océ] Agreement."   Id., exh. E thereto

18 at 1, ¶¶ 1-3; and 5.   Mr. Jones further declared that he

19 "understood and intended that, if Oce failed or refused to allow

20 PageMasters to properly audit its books and records, PageMasters

21 was permitted to pursue its rights and remedies under the [Océ]

22 Agreement with [Autodesk]."   Id., exh. E thereto at 2, ¶ 7.   At

23 that time Mr. Jones frankly declared that "[o]n behalf of

24 PageMasters, [he] did not intend that . . . Autodesk, would be

25 burdened with pursuing Oce to recover on any of PageMasters' rights

26 and claims that existed at the time of the [APA]."   Id., exh. E

27 thereto at 2, ¶ 8.   With further candor, Mr. Jones stated that he

28 "did not want . . . Autodesk to pursue PageMasters' rights,

because" it did not have "the business information and financial motivation to vigorously pursue claims solely for PageMasters' benefit." Id.   In essence, PageMasters' response to Océ' summary judgment motion in PageMasters I incorporated this view.  See id., exh. C thereto at 12 ("It would be illogical for the parties to contemplate that [Autodesk] would be burdened with pursuing PageMasters' right that existed under the Oce Agreement prior to the closing of the [APA].")

Furthermore, in PageMasters I, PageMasters reiterated its position that PageMasters was an "indispensable party to the Arbitration[.]" Id., exh. C thereto at 16 and 17.  Finding that the APA did "not state that PageMasters retained a right to pursue arbitration against Océ[,]" on October 25, 2004, this court granted Océ's summary judgment motion.  Id., exh. F thereto at 7:23-25; and at 13:23-24.  The court also denied PageMasters leave to join Autodesk in the arbitration.  Id., exh. F thereto at 13:2-3. Likewise, although PageMasters discussed the issue of its audit right in PageMasters I, the court explicitly declined to rule on that issue because it was "not currently before th[e] Court." Id., exh. F thereto at 5: n 4.

### B. Pagemasters II

Trying a new tactic, a week after the entry of that order, on November 1, 2004, PageMasters filed suit against Océ in Maricopa County Superior Court, State of Arizona.  Id., exh. G thereto. PageMasters sought to compel an audit pursuant to the terms of the Océ Agreement.  PageMasters did not name Autodesk as a party to that action.

After removal to this court, on cross-motions for summary

judgment, PageMasters again took the position that under the APA it "did not transfer and assign to [Autodesk]. . . . its right to conduct an audit of Oce's books and records[.]" _Id._, exh. I thereto at 4, ¶ 12.  PageMasters continued to adhere to its view that under the APA, it had "negotiated for a continuing right to audit Oce's books and records."  _Id._, exh. I thereto at 7, ¶ 22 (citation omitted).

On March 23, 2006, this court granted Océ's motion for summary judgment.  The court found that the APA did "not state that PageMasters retained the right to independently pursue . . . an audit[]" under the single-audit provision.  _Id._, exh. K thereto at 9:1-2.  "Instead," the court found that the APA "language specifically declares that [Autodesk] will provide _reasonable assistance_ to PageMasters to _assist_ PageMasters in conducting the audit[.]" _Id._, exh. K thereto at 9:2-5 (emphasis added).  Further, according to the court, "the plain language of the [APA] indicates that the parties intended to transfer to [Autodesk] all rights and responsibilities pertaining to the [Océ] Agreement, including the right to conduct the 'single' audit to collect any remaining royalty payments due to PageMasters." _Id._, exh. K thereto at 9:6-10.  In so holding, the court explained that "[t]he 'single' audit clause contained within section 5.16 is merely an agreement between PageMasters and [Autodesk] that _requires_ [_Autodesk_] _to allow and assist_ such an audit, and deliver to PageMasters any royalties it discovers through such an audit." _Id._, exh. K thereto at 9:10-14 (emphasis added).  Finding "that the parties contemplated that only [Autodesk] would have the right to conduct the audit of Océ[,]" the court concluded that "[a]n independent right to audit Océ was not

expressly retained for PageMasters within the contract." Id., exh.
K thereto at 9:21-24.  Finally, the court denied PageMasters'
request for leave to join [Autodesk][.]" Id., exh. K thereto at
11:15-17.

Nine months later, PageMasters moved for relief from judgment
of that March 23, 2006 order. Id., exh. L thereto.  The basis for
that motion was Océ's supposed "fail[ure] to disclose the fact that
it had entered into an agreement with Autodesk . . . , to acquire
the right and interests under" the Océ Agreement. Id., exh. L
thereto at 1.  On September 11, 2007, the court denied that motion,
finding, *inter alia*, that in the exercise of due diligence,
PageMasters could have discovered the Autodesk-Océ Agreement. Id.,
exh. O thereto at 7-9.

### ***C.  Pagemasters III***

On March 20, 2008, PageMasters filed the present action.  In a
sparse complaint, with no mention of the preceding four years of
litigation in this court, PageMasters alleges that it "has demanded
that Autodesk perform its responsibilities under the [APA] . . . to
demand an audit of Oce's financial records[,]" and to pay
PageMasters what it believes is "several million dollars" owed to
it by Océ.  Co. (doc. 1) at 3, ¶¶ 9 and 10.  Conspicuously lacking
from the complaint are any allegations as to the time frame of that
demand.  Again with no mention of time frame, PageMasters baldly
alleges that "Autodesk has refused to perform its responsibilities
under, and therefore . . . is in breach of, the [APA]." Id. at 3,
¶ 11.  PageMasters is seeking a declaration that Autodesk is
"required . . . to demand and perform an audit of Oce's financial
records and turn over to PageMasters the net revenues from accounts

1  receivable due and owing by Oce to PageMasters[.]" Id. at 3, ¶ (A).

2  PageMasters also seeks an award of "appropriate damages[.]" Id. at

3  3, ¶ (B).

## *Discussion*

5      Autodesk filed the present pre-answer motion asserting three

6  independent grounds for dismissal.  First, plaintiffs' claims are

7  barred by the statute of limitations.  Second, the equitable

8  doctrine of laches bars those claims.  Third, even if neither of

9  those defenses are availing, Autodesk maintains that it is entitled

10  to dismissal for failure to state a claim because it has no

11  obligation under the APA to "demand and perform" an audit.  Its

12  obligation thereunder is limited to providing reasonable assistance

13  with the audit.

14      The court will address the statute of limitations argument

15  first because if Autodesk prevails on that argument, it renders

16  moot the other two dismissal arguments.

### *I.  Statute of Limitations*

18      "If the expiration of the applicable statute of limitations

19  is apparent from the face of the complaint," it is well settled

20  that "the defendant may raise [that] defense in a Rule 12(b)(6)

21  motion to dismiss."  See  In re Juniper Networks, Inc. Sec. Litig.,

22  542 F.Supp.2d 1037, 1050 (N.D.Cal. 2008) (citing Jablon v. Dean

23  Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)).  In the present

24  case, however, the complaint does not include any allegations

25  whatsoever as to time.  It is, therefore, impossible to ascertain

26  from the face thereof the timeliness of this action.  Thus,

27  Autodesk properly resorted to the judicially noticed matters

28  previously discussed, in an effort to show its entitlement to

1  dismissal on statute of limitations grounds.  See Yeager v. Bowlin,

2  2008 WL 3289481 at *3 (E.D.Cal. Aug. 6, 2008) (internal quotation

3  marks and citation omitted) (taking judicial notice "of the fact

4  and content" of documents filed in other cases as they "directly

5  relat[ed]" to whether and when plaintiff had notice of his

6  potential claims such that they would not be barred by the

7  applicable statutes of limitations[]); see also Ritchey v. Upjohn

8  Drug Co., 139 F.3d 1313, 1319-20 (9th Cir. 1998) ("[W]hen the

9  strobe of judicial notice is played upon [plaintiff's] pleading, it

10  appears perfectly clear that the statute of limitations is a

11  defense[.]")

12      The parties agree that California's four year statute of

13  limitations for breach of contract actions, Cal Code Civ. Proc. §

14  337(1),[5] applies to this declaratory judgment action premised upon

15  breach of the APA.  See Booth v. Quantum3d, Inc., 2005 WL 1512138,

16  at *9 (N.D.Cal. June 15, 2005) (applying California's four year

17  statute of limitations in declaratory judgment action based upon

18  breach of contract) (citing, inter alia, 118 East 60th Owners, Inc.

19  v. Bonner Properties, Inc., 677 F.2d 200, 2002 (2d Cir. 1982)

20  ("When the declaratory judgment sought by a plaintiff would declare

21  his entitlement to some affirmative relief, his suit is time-barred

22  if the applicable limitations period has run on a direct claim to

23  obtain such relief.")) They disagree, however, as to the accrual

24      _____

25      [5]    California law applies because that is the "governing law" of the APA.
        RJN (doc. 11), exh. B thereto at 11, § 8.16.  This choice of law provision includes
        limitations periods.  See In re Western United Nurseries, Inc., 2000 WL 34446155,

26      at *8 (D.Ariz. July 3, 2000) (footnote omitted) ("Arizona's conflict-of-law
        principles no longer treat limitations periods as procedural matters to be
        determined by the law of the forum.  Instead, section 187 of the Restatement

27      requires that a valid, general choice-of-law clause be deemed to include the
        statutes of limitations of the chosen state."), amended in part, vacated in part

28      on rehearing on other grounds, 2000 WL 3448963 (D.Ariz. Sept. 29, 2000).

1  date for that statute of limitations.

2      Autodesk maintains that PageMasters' cause of action accrued

3  in October, 2000, prior to the Autodesk/Buzzsaw merger, when

4  PageMasters began to conduct an audit pursuant to the Océ

5  Agreement.  Autodesk asserts that "PageMasters could have enforced

6  the [reasonable] assistance clause at that time[,]" but it did not.

7  Mot. (doc. 10) at 11:2-3 (citation omitted).  Instead, PageMasters

8  waited until seven years later, March, 2008, when it commenced this

9  lawsuit to attempt to enforce that clause against Autodesk.  Thus,

10  Autodesk argues that this action is time-barred.

11      Alternatively, Autodesk contends that PageMasters was on

12  notice of its claim against Autodesk at least by November 26, 2003,

13  when it filed a motion to join Autodesk as an "indispensable party"

14  in the arbitration.  See RJN (doc. 11), exh. D thereto at 5, ¶ 17

15  (citation omitted); and exh. N thereto.  Therefore, Autodesk

16  contends that this action is not timely because it accrued at the

17  time of that notice, on November 26, 2003, more than four years

18  prior to the commencement of this action.

19      PageMasters did not dispute or otherwise respond to Autodesk's

20  arguments that the accrual date is either October 2000, or November

21  23, 2006.  Instead, noting the absence of any "deadline" in the

22  agreements as to performance of an audit by Autodesk, PageMasters

23  declares that the statute of limitations "did not accrue until it

24  sent [a] written demand to Autodesk on September 12, 2007, *and*

25  Autodesk notified PageMasters that it was refusing to perform the

26

27

28

1   duties demanded of it by PageMasters.[6]"  Resp. (doc. 17) at 4

2   (emphasis added).  Thus, PageMasters argues that this action, which

3   was filed less than a year later, on March 20, 2008, is timely.

4       Autodesk challenges PageMasters's reliance upon "'discussions'

5   and correspondence" not alleged in the complaint as a basis for

6   establishing a September 2007 accrual date.  Even taking those

7   matters into account, it is Autodesk's position that it should

8   still prevail on its statute of limitations defense because,

9   basically, PageMasters sat on its rights by not making a demand for

10  performance earlier.  Finally, Autodesk distinguishes PageMasters'

11  authority because those cases did not involve "the situation in

12  which the plaintiff's right to demand performance has accrued but

13  nonetheless the plaintiff fails to exercise that right within the

14  limitations period."  Reply (doc. 20) at 6:7-9 (footnote omitted).

15      "Under California law, an action must be commenced within the

16  prescribed limitations period 'after the cause of action shall have

17  accrued.'"  Diorio v. Coca-Cola Company, 2009 WL 483190, at *2

18  (S.D.Cal. Feb. 24, 2009) (quoting CAL. CODE CIV. PROC. § 312).  In

19  California, "[a] cause of action accrues when the wrongful act is

20  done and the consequent liability arises."  Id. (citation omitted).

21  "[I]n ordinary . . . contract actions, the statute of limitations .

22  . . begins to run upon the occurrence of the last element essential

23  to the cause of action."  El Pollo Loco, Inc. v. Hashim, 316 F.3d

24  1032, 1039 (9th Cir. 2003) (internal quotation marks and citation

25  _____

26      [6]   As discussed earlier, the court is not considering this September 12,
    2007 letter.  Nonetheless, the court observes that there is nothing in that letter
27  or elsewhere which indicates when Autodesk purportedly refused to perform.  Hence,
    it is impossible to ascertain both when PageMasters demanded that Autodesk fulfill
28  its responsibilities under the APA, and, in turn, when Autodesk supposedly refused.

1  omitted).   In a case such as this, however, where the contract does

2  not specify a time for "performance of an act required to be

3  performed," then, "a reasonable time is allowed."   Cal. Civ. Code §

4  1657.

5       By contending that the accrual date is September 12, 2007,

6  Autodesk retorts that PageMasters "ignore[s]" the "well-settled

7  principle" that where a contract "provides that a party can demand

8  action by another party, that party cannot unilaterally toll the

9  statute of limitations indefinitely by refusing to make a demand."

10 Reply (doc. 20) at 4:25-26 (citation omitted).   It is not

11 PageMaster's disregard for that principle which undermines its

12 argument that the accrual date is September 12, 2007.   Rather, as

13 Autodesk alludes to, and explained below, it is PageMasters'

14 failure to make a demand within the statute of limitations which

15 defeats its suggestion of a September 12, 2007 accrual date.

16      "Where a demand is an integral part of a cause of action, the

17 statute of limitations does not run until demand is made."   Phillis

18 v. City of Santa Barbara, 229 Cal.App.2d 45, 55, 40 Cal.Rptr. 27,

19 31 (1964) (internal quotation marks and citation omitted).

20 Generally, "where demand is necessary to perfect a right of action

21 and no time therefore is specified in the contract, the demand must

22 be made within a reasonable time after it can lawfully be made."

23 Id. (internal quotation marks and citations omitted).   "What is a

24 reasonable time depends upon the circumstances of each case; but in

25 the absence of peculiar circumstances, a time coincident with the

26 running of the statute will be deemed reasonable, and if a demand

27 is not made within that period, the action will be barred."   Id.

28 (internal quotation marks and citation omitted).

1    Applying these well-settled rules to the present case, clearly
2  this action is time-barred.  The APA does not specify a time frame
3  in which PageMasters was required to demand that Autodesk provide
4  "reasonable assistance" with the Océ audit.  And, there has been no
5  suggestion of "peculiar circumstances."  That means that for
6  PageMasters' action to be timely, it should have demanded that
7  Autodesk provide reasonable assistance with the Océ audit within
8  four years of the time it first initiated the audit.  In other
9  words, it should have demanded reasonable assistance by October
10 2004 at the latest.  It is undisputed that PageMasters did not make
11 a demand within that four year time frame.  Accordingly, the court
12 grants Autodesk's motion to dismiss based upon the statute of
13 limitations.  See Guerrero-Melchor v. Arulaid, 2008 WL 539054, at
14 *2 (W.D.Wash. Feb. 22, 2008) (citation omitted).[7]

15 ## II.  Failure to State a Claim

16    Although the court has found that this action is time barred,
17 it will, nonetheless, address Autodesk's argument on the merits.
18 Even if timely, Autodesk maintains that dismissal is proper because

19
20    [7]    Having resolved Autodesk's statute of limitations argument on the
grounds of failure to timely make a demand, there is no need to consider its
alternative argument that PageMasters had notice inquiry of its claim on November
21 26, 2003, when it first filed a motion to join Autodesk as an indispensable party.
The court does have two observations about Autodesk's attempt to invoke what is
22 commonly referred to as the discovery rule.
    First, "[t]here is generally little need" to rely upon that rule "in breach
23 of contract cases[,]" such as this.  See Leonard v. The College Network, Inc., 2004
WL 2944050, at *4 (N.D.Cal. Dec. 17, 2004).  The discovery rule may be applied in
24 "unique breach of contract cases[,]" essentially "involving fraud or
misrepresentation[,]" El Pollo Loco, 316 F.3d at 1039 and 1040 (internal quotation
marks and citations omitted); but, PageMasters' complaint does not include any such
25 allegations.
    Second, and more importantly, typically plaintiffs - not defendants – invoke
26 the discovery rule, which "permits delayed accrual until a plaintiff knew or should
have known of the wrongful conduct at issue." Id. at 1039(internal quotation marks
27 and citation omitted).  In light of the foregoing, the court has serious
reservations whether the discovery rule can be applied defensively.  Resolution of
28 that issue can be left to another day however.

1  this action is based on the "unfounded assertion" that it had an

2  obligation under the APA to "demand and perform" an audit of Océ's

3  financial records.  Mot. (Doc. 10) at 17:3-4.  Autodesk's

4  obligation under the APA was much more limited, it asserts,

5  requiring only that it provide "'reasonable assistance'" to

6  PageMasters in conjunction with the Océ audit.  Id. at 16:10

7  (quoting, *inter alia*, RJN (doc. 12), exh. B thereto at 20, § 5.16))

8      Remarkably, PageMasters did not respond at all to this

9  argument.  The court construes PageMasters' silence as conceding

10 the validity of Autodesk's argument on the merits.  See Tatum v.

11 Schwartz, 2007 WL 419463, at *3 (E.D.Cal. Feb. 5, 2007) (granting

12 defendants' motion to dismiss where plaintiff "tacitly concede[d]

13 . . . claim by failing to address defendants' argument in her

14 opposition[]").  Even without that implicit concession, Autodesk

15 would prevail for the reasons set forth below.

16     A cause of action for breach of contract in California

17 "requires proof of the following elements: (1) existence of the

18 contract; (2) plaintiff's performance or excuse for nonperformance;

19 (3) defendant's breach; and (4) damages to plaintiff as a result of

20 the breach."  Nava v. VirtualBank, 2008 WL 2873406, at *10

21 (E.D.Cal. July 16, 2008) (quoting CDF Firefighters v. Maldonado,

22 158 Cal.App.4th 1226, 1239, 70 Cal.Rptr.3d 667 (2008)).

23 "Resolution of contractual claims on a motion to dismiss is proper

24 if the terms of the contract are unambiguous."  Monaco v. Bear

25 Stearns Residential Mortgage Corp., 554 F.Supp.2d 1034, 1040

26 (C.D.Cal. 2008) (internal quotation marks and citations omitted).

27 The court must decide in the first instance "whether the contract

28 language is clear or ambiguous[.]"  Navarro v. Mukasey, 518 F.3d

1  729, 734 (9th Cir. 2008) (citing <u>Bank of the West v. Superior</u>

2  <u>Court</u>, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 545, 833 P.2d 545

3  (1992)).

4        Under California law, "[a] contract provision will be

5  considered ambiguous when it is capable of two or more reasonable

6  interpretations."  <u>Monaco</u>, 544 F.Supp.2d at 1040 (citation

7  omitted).  In construing a contract, "[l]anguage . . . must be

8  interpreted as a whole and in the circumstances of the case."  <u>Id.</u>

9  (citation omitted).  "Where the language leaves doubt as to the

10  parties' intent, . . . the motion to dismiss must be denied."  <u>Id.</u>

11  (internal quotation marks and citations omitted).  By the same

12  token though, "[i]f the contract language is clear, [the court]

13  give[s] effect to its plain meaning."  <u>Navarro</u>, 518 F.3d at 734

14  (citation omitted); <u>see also</u> <u>Arbor Acres Farm, Inc. v. GRE Ins.</u>

15  <u>Group</u>, 2002 WL 32107944, at *2 (E.D.Cal. Jan. 23, 2002) (internal

16  quotation marks and citation omitted) ("Interpretation of written

17  instrument is solely a judicial function unless the determination

18  turns upon the credibility of extrinsic evidence.")

19        Here, the parties have differing interpretations of the APA's

20  single audit provision.  As recited earlier, that provision states:

21              [Autodesk] will provide *reasonable assistance* to
             [PageMasters] *to assist* [PageMasters] in conducting
22           a single audit of Océ's financial records (as
             permitted under the Océ Agreement) to verify amounts
23           due and paid by Océ to [PageMasters] prior to the
             Closing, and will pay [PageMasters] the Net Revenues
24           actually recovered pursuant to such audit.

25  RJN (doc. 11), exh. B thereto at 20, § 5.16 (emphasis added).

26  Quoting directly from section 5.16, Autodesk reads that section as

27  requiring that it provide "reasonable assistance" to PageMasters

28  "to assist" PageMasters in conducting the audit.  Apparently, in

1   Autodesk's view, "reasonable assistance" does not encompass

2   demanding the audit of Océ in the first place.

3       Based upon the allegations in the complaint, however,

4   evidently PageMasters is construing section 5.16 as requiring

5   Autodesk to demand an audit of Océ.  PageMasters expressly alleges

6   that Autodesk breached "its responsibilities under . . . the

7   [APA][,]" by not "*demand[ing] an audit* of Oce's financial

8   records[.]" Co. (doc. 1) at 3, ¶¶ 9 and 11 (emphasis added).  The

9   relief which PageMasters seeks is even broader in scope.  As a

10  result of that alleged breach, PageMasters seeks a declaration that

11  "Autodesk is not only required to "*demand . . .* an audit of Oce's

12  financial records[,]" but also to "*perform*" that audit.  See

13  id. at 3, ¶ (A) (emphasis added).

14      Applying the familiar rules of contract interpretation

15  construction outlined above, the court finds that section 5.16 of

16  the APA is clear and unambiguous.  It is not capable of two or more

17  reasonable interpretations.  That section requires, as Autodesk

18  maintains, only that Autodesk give "reasonable assistance" to

19  PageMasters in conducting the audit.  Making the initial demand for

20  the audit does not come within the plain and ordinary meaning of

21  "assist."  "The American Heritage Dictionary of the English

22  Language defines 'to assist' as '[t]o give help or support to,

23  *especially as a subordinate or supplement*; aid.'" U.S. v.

24  Approximately 64,695 Pounds of Shark Fins, 520 F.3d 976, 980 (9th

25  Cir. 2008) (quoting *American Heritage Dictionary of the English*

26  *Language* (4th ed.2000)) (emphasis added).  Nor under any reasonable

27  interpretation of "assistance" can performance of the audit, as

28  PageMasters seeks in its prayer for relief, constitute mere

- 22 -

"assistance." Under the circumstances, the assistance language in the APA, which necessarily includes an element of subordination, cannot reasonably be read to require Autodesk to demand an audit of Océ in the first instance. Moreover, the court cannot ignore the fact that nowhere in the APA is Autodesk under any obligation to "demand and perform" an audit of Océ – the precise relief to which PageMasters claims it is entitled. See Co. (doc. 1) at 3, ¶ (A). Therefore, the court finds that Autodesk is entitled to dismissal of the complaint as against it because it is "clear from the unambiguous terms of the [APA] that the alleged conduct by [Autodesk] does not constitute breach of contract." See Mieuli v. Debartolo, 2001 WL 777447, *5 (N.D.Cal. Jan. 16, 2001) (citations omitted).

The court would be remiss if it did not address PageMasters' suggestion that its summary judgment order in PageMasters II somehow governs the scope of the parties' obligations here. PageMasters' reliance upon that order is misplaced because Autodesk was not a party to that action. Therefore, any findings therein cannot be given preclusive effect against Autodesk, based upon the doctrine of collateral estoppel. See Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1050 (9th Cir. 2008) (internal quotation marks and citation omitted) ("Issue preclusion prevents a party from relitigating an issue decided in a prior action if four requirements are met[,]" including "the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.") Not only that, if PageMasters is attempting to rely upon collateral estoppel, it has failed to meet its burden because it has not proven that each

1  of the four elements of issue preclusion are met here.  See id. at

2  1050-1051.  Finally, the court notes that consistent with its

3  reading herein of section 5.16 of the APA, in PageMasters II, it

4  read that same section as "merely an agreement between PageMasters

5  and [Autodesk] that requires [Autodesk] to allow and assist such an

6  audit[.]" RJN (doc. 11), exh. K thereto at 9:11-13 (emphasis

7  added).  For all of these reasons, the court finds that PageMasters

8  has failed to state a claim for which relief may be granted against

9  Autodesk.

10  ### *Conclusion*

11      Having found that this action is barred by California's four

12  year statute of limitations for breach of contract, and that,

13  alternatively, plaintiff has failed to state a cause of action for

14  breach of contract under California law,[8] IT IS ORDERED that:

15      (1) "Defendant Autodesk, Inc.'s Motion to Dismiss PageMasters'

16  Complaint" (doc. 10) is GRANTED; and the complaint is dismissed

17  with prejudice; and

18      (2) the Clerk of the Court is directed to enter JUDGMENT in

19  favor of defendant Autodesk, Inc. and to terminate the case.

20      DATED this 30th day of March, 2009.

21

22

23  _____

24  Robert C. Broomfield
    Senior United States District Judge

25

26  Copies to counsel of record

27  _____

28      [8]   Given these alternative bases for dismissal, there is no need to
    consider Autodesk's laches argument.